McNulty, Appellant, *v.* Curry, Registrar of Motor Vehicles, Appellee.

[Cite as McNulty v. Curry (1975), 42 Ohio St. 2d 341.]

(No. 74-630—Decided May 28, 1975.)

342

*Messrs. McNeal, Schick, Archibald & Carlson* and *Mr. Fredric E. Kramer,* for appellant.

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Thomas A. Cables,* for appellee.

WILLIAM B. BROWN, J. Appellant basically contends that he was entitled to, and deprived of, the due process guarantees of the Sixth and Fourteenth Amendments to the United States Constitution "in that he was unable to consult with counsel prior to making any decision on the test requested by the arresting police department."

Paragraph two of the syllabus in *State* v. *Starnes* (1970), 21 Ohio St. 2d 38, reads:

"Section 4511.191(F), Revised Code, does not violate the due process clause of the Fourteenth Amendment to the United States Constitution by permitting suspension of a person's driver's license upon proof less than proof beyond a reasonable doubt that (1) a police officer had reasonable ground to believe the person had been driving a motor vehicle upon the public highways in this state while under the influence of alcohol (2) the person was placed under arrest (3) *the person refused to submit to a chemical test upon request of the officer* and (4) the person was advised of the consequences of his refusal. Proceedings under Section 4511.191(F), Revised Code, are civil and administrative in nature and are intended for the protection of the traveling public, and are independent of any criminal proceedings which may be instituted pursuant to other statutes or ordinances." (Emphasis ours.)

The question presented is whether appellant "refused" to take the test. This court holds that appellant did

so refuse by his refusal to take the test "until he got a hold of his attorney" or "until his attorney arrived."

I

In *Schmerber* v. *California* (1966), 384 U. S. 757, police officers performed a blood-alcohol test on defendant Schmerber despite his refusal, on the advice of counsel, to consent to the test. Upon that basis, a denial of the right to counsel claim was asserted, but it was rejected by the court because Schmerber, having no right to refuse to take the test, was not denied legal advice as to his *rights*. The court said, at page 766: "* * * No issue of counsel's ability to assist petitioner in respect of any rights he did possess is presented. * * *"

Lest we lose sight of our constitutional guarantees, the Sixth Amendment, in pertinent part, provides:

"In all *criminal prosecutions,* the accused shall enjoy the right * * * to have the assistance of counsel for his defense."

Section 10, Article I of the Ohio Constitution provides:

"In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel * * *."

The Fourteenth Amendment provides that no state shall "* * * deprive any person of life, liberty, or property, without due process of law * * *."

The Supreme Court, in recognition of modern criminal prosecution, has construed the Sixth Amendment provision to "apply to 'critical' stages of the proceedings. * * *" *United States* v. *Wade* (1967), 388 U. S. 218, 224.

In *United States* v. *Wade, supra,* at page 227, the court determined that lineups are "critical stages" of the proceedings as opposed to mere "preparatory steps, *such as* systematized or scientific analyzing of the accused's * * * blood sample."* (Emphasis ours.) Inasmuch as the submission to a blood test necessarily precedes the blood's analysis, such stage is merely preparatory to a "preparatory step" and, thus, beyond the ambit of Sixth Amendment protection.

Under the Ohio implied-consent statute, R. C. 4511.191, a person accused of driving while intoxicated has no constitutional right to refuse to take a blood-alcohol test. (*Westerville* v. *Cunningham* [1968], 15 Ohio St. 2d 121, paragraph two of the syllabus.) That statute is constitutional, and proceedings thereunder are not a criminal prosecution,[1] but are civil and administrative only. *Hoban* v. *Rice* (1971), 25 Ohio St. 2d 111, paragraph one of the syllabus; *State* v. *Starnes, supra* (21 Ohio St. 2d 38, paragraph two of the syllabus).

In light of the foregoing, it is the judgment of this court that the constitutional right to counsel has no application to this case, because the decision to withhold or give consent to take a test is not a "critical stage" of a "criminal prosecution."

## II

This court further holds that the pre-suspension court hearing, provided by R. C. 4511.191, is sufficient to pass muster under the due process clause. *Bell* v. *Burson* (1971), 402 U. S. 535.

It is well settled that a motorist's refusal to submit to an intoxication test, under an implied-consent statute, is an adequate basis for revocation of his driver's license. 60 Corpus Juris Secundum 852, Motor Vehicles, Section 164.-16; 7 American Jurisprudence 2d, 678, Automobiles and Highway Traffic, Section 115.

However, appellant asserts, in effect, that he gave a *qualified* refusal which was reasonable and legally justified because he merely wanted to postpone the decision until he could confer with his lawyer. That assertion has been before the courts of other states, and the consistent holding thereon is that implied-consent statutes do not sanction a qualified or conditional refusal based upon coun-

---

[1]See authorities cited in *State* v. *Starnes* (1970), 21 Ohio St. 2d 38, 44; 60 Corpus Juris Secundum 820, Motor Vehicles, Section 164.1; *David* v. *Strelecki* (1968), 51 N. J. 563, 242 A. 2d 371, *certiorari denied*, 393 U. S. 933; *Matter of Barnes* v. *Tofany* (1970), 27 N. Y. 2d 74, 261 N. E. 2d 617.

sel being present or consulted prior to a decision to take the test.[2]

### III

Although not raised by the parties, we next consider the applicability of Ohio's *statutory* right to counsel contained in R. C. 2935.14 and 2935.20.[3]

[2]*Rust* v. *Dept. of Motor Vehicles* (1968), 267 Cal. App. 2d 545, 546, 73 Cal. Rptr. 366 ("A suspected drunk driver has refused to take the blood alcohol test when he conditions his consent on having counsel present; he is not entitled to the advice of counsel in connection with the test."); *Ent* v. *Dept. of Motor Vehicles* (1968), 265 Cal. App. 2d 936, 71 Cal. Rptr. 726; *Finley* v. *Orr* (1968), 262 Cal. App. 2d 656, 69 Cal. Rptr. 137; *Mills* v. *Bridges* (1970), 93 Idaho 679, 682, 471 P. 2d 66; *Campbell* v. *Superior Court* (1971), 106 Ariz. 542, 479 P. 2d 685; *Blow* v. *Commr. of Motor Vehicles* (1969), 83 S. Dak. 628, 633, 164 N. W. 2d 351; *Matter of Finocchairio* v. *Kelly* (1962), 11 N. Y. 2d 58, 181 N. E. 2d 427, *certiorari denied,* 370 U. S. 912; *David* v. *Strelecki, supra,* fn. 1. Contra, *Troy* v. *Curry* (1973), 36 Ohio Misc. 144; *Narten* v. *Curry* (1972), 33 Ohio Misc. 94.

[3]R. C. 2935.14 reads:

"If the person arrested is unable to offer sufficient bail or, if the offense charged be a felony, he shall, prior to being confined or removed from the county of arrest, as the case may be, be speedily permitted facilities to communicate with an attorney at law of his own choice, or to communicate with at least one relative or other person for the purpose of obtaining counsel (or in cases of misdemeanors or ordinance violation for the purpose of arranging bail). He shall not thereafter be confined or removed from the county or from the situs of initial detention until such attorney has had reasonable opportunity to confer with him privately, or other person to arrange bail, under such security measures as may be necessary under the circumstances.

"Whoever, being a police officer in charge of a prisoner, or the custodian of any jail or place of confinement, violates this section shall be fined not less than one hundred nor more than five hundred dollars or imprisoned not more than thirty days, or both."

R. C. 2935.20 reads:

"After the arrest, detention, or any other taking into custody of a person, with or without a warrant, such person shall be permitted forthwith facilities to communicate with an attorney at law of his choice who is entitled to practice in the courts of this state, or to communicate with any other person of his choice for the purpose of obtaining counsel. Such communication may be made by a reasonable number of telephone calls or in any other reasonable manner. Such person shall have a right

R. C. 2935.14 does not apply because appellant was not arrested for a felony and there is no evidence that he was unable to make bail. However, the mandatory provisions thereof were fully complied with by the attending police officers because this record clearly shows that appellant was "* * * speedily permitted facilities to communicate with an attorney at law of his own choice, or to communicate with at least one * * * person for the purpose of obtaining counsel * * *." Cf. *Toledo* v. *Dietz* (1965), 3 Ohio St. 2d 30, paragraph two of the syllabus.

R. C. 2935.20 clearly applies to this case, but, here again, there is no want of compliance on the part of the arresting officers. Evidence of record indicates that appellant was given practically free access to a telephone; that he was not restricted on the number of calls made; that upon reaching his friend Short, he spoke with him for over 10 minutes, and that Short eventually dispatched appellant's lawyer to his aid; and that at no time and in no way did the police officers attempt to interfere or abbreviate appellant's consultation with his attorney when he finally arrived.

Inasmuch as R. C. 2935.14 and 2935.20 "provide a right beyond those guaranteed by the federal Constitution" (*State* v. *Jones* [1974], 37 Ohio St. 2d 21, 24, fn. 1), and since they were meticulously followed in this case, we find no error, and hold that appellant "refused" to take the test, where he continued to withhold his consent after the police officers had complied with R. C. 2935.14 and 2935.20.

This court is cognizant of the difficulties and complexities of modern traffic law enforcement and does not wish

---

to be visited immediately by any attorney at law so obtained who is entitled to practice in the courts of this state, and to consult with him privately. No officer or any other agent of this state shall prevent, attempt to prevent, or advise such person against the communication, visit, or consultation provided for by this section.

"Whoever violates this section shall be fined not less than twenty-five nor more than one hundred dollars or imprisoned not more than thirty days, or both."

to deter or discourage good faith police procedures which reasonably assure that traffic violators will be fairly dealt with. To conclude that a refusal can not occur until an actual consultation with chosen counsel is secured would emasculate the implied-consent law. Most arrests for O. M. V. I. are made late at night, and many are made in remote or rural areas, with counsel not easily available.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CELEBREZZE and P. BROWN, JJ., concur.

CORRIGAN and STERN, JJ., dissent.

STERN, J., dissenting. In cases arising under R. C. 4511.191, the criminal offense of driving while under the influence of alcohol and the civil sanction of suspension of driving rights for *refusal* to take the required sobriety test, are separate and distinct matters. Until the time that there is a refusal to take the test it is difficult to distinguish between them. The civil proceeding is based upon the arrest and refusal, and the refusal carries with it the penalty of automatic forfeiture of driving privileges for the prescribed period.

According to *Hoban* v. *Rice* (1971), 25 Ohio St. 2d 111, second paragraph of the syllabus, there are four conditions precedent to suspending a driver's license under R. C. 4511.191. The third condition is that "the person refused to submit to a * * * test * * * upon the request of the arresting officer." The basis for this interpretation of R. C. 4511.191 is to afford due process in a proceeding based upon the refusal of an accused to take the test. See *State* v. *Starnes* (1970), 21 Ohio St. 2d 38.

After the appellant was arrested he had the right to forthwith communicate with counsel by virtue of R. C. 2935.20. Appellant made a call to have his attorney pres-

ent at the police station; his attorney did appear within the two-hour period.

The key issue presented by this case is the meaning of the word "refusal." Did the appellant refuse to take the test so that the implied consent provision of R. C. 4511.191 becomes applicable? I am of the opinion that the appellant did *not* refuse to take the test.

In *In re Masters* (1956), 165 Ohio St. 503, 506, this court adopted the dictionary definition of "refusal" as the denial of anything demanded, solicited or offered for acceptance.

The record reveals the following testimony by Patrolman Hamp:

"Q. Do you recall immediately after that time what happened? I am asking immediately after, if you can recall. You said in the record here that he said he wouldn't take the test until he got a hold of his attorney?

"A. Yes sir. Then, when I started asking questions from the alcoholic influence test he said he would not answer any questions at all."

On cross-examination, Patrolman Hamp further testified:

"Q. And during that period of time did you have any other conversation with Mr. McNulty?

"A. From what I can recall, it was mostly him asking if he could call his attorney and Mr. Short.

"'* * *

"Q. Officer, during that period of time wasn't it a fact that he consistently requested an attorney to be present?

"A. Yes, sir. He made a statement that he wouldn't take the test until he could get a hold of his attorney.

"Q. And he was attempting to contact someone at that time that you are aware of?

"A. He was on the phone trying to call someone, yes, sir.

"Q. Isn't it a fact that it was at that time that he told you that he wanted an attorney present for anything further that was involved in this case?

"Mr. Cables: Objection, it is irrelevant.

"The Court: Overruled. You may answer that.

"Witness: Yes, I would say that.

"Q. Including the examination that you are referring to; that you are giving him?

"A. Yes, with the statement he made I would say he just didn't want to answer nothing until he had counsel."

Appellant in this case did not inform the arresting officer that he would not take the test. Rather, he stated that he would not make any decision until he had been advised by counsel. In the law of contracts, it is not a refusal or rejection of an offer to take the offer under advisement. "An offer is rejected when the offeror is justified in inferring from the words or conduct of the offeree that the offeree intends not to accept the offer *or take it under further advisement.*" 1 Restatement of Law, Contracts, 45, Section 36. (Emphasis added.) Nor is it a "refusal" in the common understanding of the word. Some reasonable time is necessary to make any decision, particularly one involving matters of possible criminal prosecution and loss of driving rights. A request to confer with counsel is a reasonable one, and when that request is not made solely for purposes of delay and does not in fact result in delay beyond the statutory two-hour period within which the test is effective, I am of the opinion that it is not a refusal.

The majority relies upon cases which have to do with a direct "refusal," and the statute is clear as to what occurs when there is a "refusal." In my opinion, interpreting appellant's conduct in this case as a "refusal," when appellant only failed to take the test until he consulted with counsel, is to add a meaning to the word that is not there.

Under the circumstances of this case, I would reverse the judgment of the Court of Appeals.

CORRIGAN, J., concurs in the foregoing dissenting opinion.