[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 533.]

DOBBINS, APPELLANT, *v*. OHIO BUREAU OF MOTOR VEHICLES, APPELLEE.

[Cite as *Dobbins v. Ohio Bur. of Motor Vehicles*, 1996-Ohio-454.]

*Criminal procedure—Right to counsel—Audiotaping of telephone conversation between an arrestee and attorney violates R.C. 2935.20—Motor vehicles—Driving while intoxicated—By refusing to submit to blood-alcohol content test contingent on receiving advice of counsel, arrestee has, for purposes of implied consent statute, R.C. 4511.191, "refused" to take the chemical alcohol test.*

———————————

1. The audiotaping of a telephone conversation between an arrestee and her attorney violates R.C. 2935.20, since it does not allow the arrestee to engage in a private consultation with the attorney.

2. In the absence of any constitutional violations, when the police violate the statutory right to counsel contained in R.C. 2935.20, and the arrestee refuses to submit to the blood-alcohol content test until she effectively speaks with her attorney, the arrestee remains subject to license suspension. By refusing to submit to the test contingent on receiving the advice of counsel, the arrestee has, for the purposes of the implied consent statute, R.C. 4511.191, "refused" to take the chemical alcohol test.

———————————

(No. 95-775—Submitted March 20, 1996—Decided June 5, 1996.)

APPEAL from the Court of Appeals for Summit County, No. 16514.

———————————

{¶ 1} On May 19, 1993, respondent-appellee, Ohio Bureau of Motor Vehicles, notified petitioner-appellant, Peggy L. Dobbins, that her driver's license would be suspended for a year pursuant to R.C. 4511.191, Ohio's "implied consent"

statute. On May 28, 1993, appellant filed in the Akron Municipal Court a petition appealing the license suspension. An agreed statement of the evidence was approved by the municipal court and set forth the following facts:

"1. Appellant was arrested for driving under the influence of alcohol on March 13, 1993;

"2. Upon being brought to the Akron Police Department breath-testing room, Appellant requested the opportunity to consult with her attorney;

"3. One of two officers present informed Appellant that she would be video and audio taped during her conversation with her attorney, and then allowed Appellant to make her phone call;

"4. During the phone conversation with her attorney, the officers stayed in the room, and Appellant was videotaped and her statements to her attorney were audio taped;

"5. Because of these circumstances, Appellant felt unable to communicate fully and freely with her attorney regarding the facts and circumstances of her arrest and prior activities that evening;

"6. After the conversation with her attorney, Appellant was asked to submit to a breath test, which she refused."

{¶ 2} The case was submitted to a referee, who found that appellee had properly suspended appellant's license and denied appellant's appeal. The municipal court overruled appellant's objections and adopted the referee's report and recommendation. The Summit County Court of Appeals affirmed the decision of the municipal court.

{¶ 3} The cause is now before this court pursuant to the allowance of a discretionary appeal.

_____

*Nicholas Swyrydenko,* for appellant.

*Douglas J. Powley*, Chief City Prosecutor, and *Thomas M. DiCaudo*, Chief Assistant City Prosecutor, for appellee.

—————————————

**ALICE ROBIE RESNICK, J.**

{¶ 4} The issues presented by this case are (1) whether police violate an arrestee's statutory right to effective communication with legal counsel contained in R.C. 2935.20 when they audiotape the telephone conversation between the arrestee and her attorney; and (2) if the police violate R.C. 2935.20 by not allowing the accused the opportunity to effectively communicate with her attorney, whether the accused has "refused" for purposes of Ohio's implied consent statute, R.C. 4511.191, if she subsequently does not take a chemical test for alcohol content.

I

{¶ 5} R.C. 2935.20 states:

"After the arrest, detention, or any other taking into custody of a person, with or without a warrant, such person shall be permitted forthwith facilities to communicate with an attorney at law of his choice who is entitled to practice in the courts of this state, or to communicate with any other person of his choice for the purpose of obtaining counsel. Such communication may be made by a reasonable number of telephone calls or in any other reasonable manner. Such person shall have a right to be visited immediately by any attorney at law so obtained who is entitled to practice in the courts of this state, and to consult with him privately. No officer or any other agent of this state shall prevent, attempt to prevent, or advise such person against the communication, visit, or consultation provided for by this section.

"Whoever violates this section shall be fined not less than twenty-five nor more than one hundred dollars or imprisoned not more than thirty days, or both."

{¶ 6} In two prior cases this court has considered whether police violated R.C. 2935.20 when they allowed the arrestee to use the telephone in order to contact

an attorney prior to administering the test for blood-alcohol content. *State v. Royster* (1976), 48 Ohio St.2d 381, 2 O.O.3d 489, 358 N.E.2d N.E.2d 616; *McNulty v. Curry* (1975), 42 Ohio St.2d 341, 71 O.O.2d 317, 328 N.E.2d 798. In *Royster*, the court held that, even though the arrestee did not use the telephone, the police had not violated the statute because they had allowed the arrestee free access to the telephone. *McNulty* held that the police did not violate the statute because they had allowed the arrestee free access to the telephone and did not interfere with or abbreviate the consultation with the attorney.

{¶ 7} The facts of this case are distinguishable from both *Royster* and *McNulty*. In the case *sub judice* the police allowed appellant free access to the telephone and did not interrupt her consultation with her attorney. However, in addition to *reasonable access* to an attorney, the statute requires that the police allow the arrestee "to consult with [the attorney] *privately*." (Emphasis added.) Audiotaping this consultation, as was done in the case at bar, entirely negates any chance of privacy the arrestee might achieve.[1]

{¶ 8} Appellee essentially contends that observation of a person charged with driving while under the influence of alcohol is necessary to ensure that the

---

1. Although R.C. 2935.20 does not clearly state whether "privacy" pertains to consultations with an attorney over the phone as well as in person, courts have long recognized that telephone consultations with criminal defense attorneys implicate the defendant's statutory and constitutional rights to an attorney and that those cases implicating a violation of those rights must be analyzed in the same manner as those involving in-person consultations with attorneys. See, *e.g.*, *State v. Milligan* (1988), 40 Ohio St.3d 341, 342-343, 533 N.E.2d 724, 727; *State v. Sargent* (1975), 41 Ohio St.2d 85, 89-90, 70 O.O.2d 169, 170-171, 322 N.E.2d 634, 638; *Tucker v. Randall* (C.A. 7, 1991), 948 F.2d 388, 391; *United States v. Coronel-Quintana* (C.A. 8, 1985), 752 F.2d 1284, 1290; *In re State Police Litigation* (D.Conn. 1995), 888 F.Supp. 1235, 1257-1258; *State v. Holland* (1985), 147 Ariz. 453, 455, 711 P.2d 592, 594; *State v. Martinez* (1982), 102 Idaho 875, 879, 643 P.2d 555, 559. See, also, Annotation, Propriety of Governmental Eavesdropping on Communications Between Accused and His Attorney (1986), 44 A.L.R.4th 841, and cases cited therein.

The content of the conversations, whether in person or over the phone, would be quite similar. This is especially true for cases involving driving while under the influence of alcohol, in which the arrest is often made in the middle of the night, a rather inconvenient time for an attorney to arrange an in-person interview when a telephone interview would accomplish the same ends.

arrestee, prior to taking the test for blood-alcohol content, does not consume some substance that would affect the test results.[2]  This, however, can be accomplished without invading the privacy of a consultation with an attorney by videotaping *without* sound recording.  The accused's physical mannerisms will adequately demonstrate his or her condition and the accused can be observed to prevent the ingestion of any substances.  Videotaping without sound will not reveal the subject matter of the conversation being held with the attorney.

{¶ 9} Ohio law, through this statute, recognizes that a truly private consultation with the accused's criminal defense attorney is essential to a proper defense.  The audiotaping of a telephone conversation between an arrestee and her attorney violates R.C. 2935.20, since it does not allow the arrestee to engage in a private consultation with the attorney.

II

{¶ 10} Having decided that the police in this case violated R.C. 2935.20, we next proceed to consider what effect, if any, that violation has on the suspension of appellant's driver's license pursuant to R.C. 4511.191(C)(1).

{¶ 11} If a person under arrest for operating a vehicle while under the influence of alcohol has been advised of the consequences of refusal to take a chemical test for blood-alcohol content as required by R.C. 4511.191(C)(1), and then refuses to have this test performed, the Registrar of Motor Vehicles will suspend the arrestee's driver's license.  R.C. 4511.191(D)(1).  This court has previously found this statute to be constitutional and all proceedings thereunder are civil in nature and solely administrative.  *McNulty v. Curry, supra*, paragraph one of the syllabus, approving and following *Hoban v. Rice* (1971), 25 Ohio St.2d 111, 54 O.O.2d 254, 267 N.E.2d 311, paragraph one of the syllabus, and *State v. Starnes*

---

2.  By regulation, law enforcement officials must observe the arrestee for twenty minutes prior to taking the chemical test.  Ohio Adm. Code 3701-53-02, Appendices A to G.

(1970), 21 Ohio St.2d 38, 50 O.O.2d 84, 254 N.E.2d 675, paragraph two of the syllabus.

{¶ 12} Initially, we note that the right to counsel associated with the protection against self-incrimination contained in the Fifth Amendment to the United States Constitution, or as guaranteed by the Sixth Amendment, does not apply to the stage at which the officer requested the chemical test for alcohol content.

{¶ 13} In *Schmerber v. California* (1966), 384 U.S. 757, 765, 86 S.Ct. 1826, 1832-1833, 16 L.Ed.2d 908, 916-917, the United States Supreme Court held that because the results of a test of a defendant's body fluids are not *testimony*, the police do not violate the constitutional prohibition against self-incrimination contained in the Fifth Amendment by requesting a blood test upon arrest for driving while under the influence of alcohol. Thus, appellant had no Fifth Amendment right to consult with an attorney prior to deciding whether or not to submit to the test for blood-alcohol content. See *McNulty*, 42 Ohio St.2d at 344-345, 71 O.O.2d at 318-319, 328 N.E.2d at 801.

{¶ 14} The United States Supreme Court has also held that the Sixth Amendment right to counsel for criminal defense applies only to the "critical stages" of the criminal proceedings. *United States v. Gouveia* (1984), 467 U.S. 180, 189, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146, 155; *United States v. Ash* (1973), 413 U.S. 300, 310-311, 93 S.Ct. 2568, 2574, 37 L.Ed.2d 619, 627; *United States v. Wade* (1967), 388 U.S. 218, 224, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149, 1156. In *McNulty*, we interpreted *Wade* to hold that a blood test is merely a step preparatory to the critical stage of the prosecution and thus the Sixth Amendment does not apply:

"In *United States v. Wade, supra*, at page 227 [87 S.Ct. at 1932, 18 L.Ed.2d at 1159-1158], the court determined that lineups are 'critical stages' of the proceedings as opposed to mere 'preparatory steps, *such as* systematized or

scientific analyzing of the accused's * * * *blood sample*.' (Emphasis ours.) Inasmuch as the submission to a blood test necessarily precedes the blood's analysis, such stage is merely preparatory to a 'preparatory step' and, thus, beyond the ambit of Sixth Amendment protection." (Emphasis *sic*.) *McNulty*, 42 Ohio St.2d at 344, 71 O.O.2d at 319, 328 N.E.2d at 801.

{¶ 15} This holding is further supported by the United States Supreme Court's dismissal of *Nyflot v. Minnesota Commr. of Pub. Safety* (1985), 474 U.S. 1027, 106 S.Ct. 586, 88 L.Ed.2d 567. In both *Nyflot* and the case at bar, the arrestees had been charged with driving under the influence of alcohol and had refused to submit to a test for blood-alcohol level until they had been able to consult with their attorneys. As the United States Court of Appeals for the Sixth Circuit stated:

"In *Nyflot*, the Supreme Court dismissed for want of a substantial federal question an appeal claiming that appellant had a sixth amendment right to counsel with respect to the decision whether to consent to a blood-alcohol test. '[D]ismissals for want of a substantial federal question without doubt reject the specific challenges presented in the statement of jurisdiction.' *Mandel v. Bradley*, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199[205] (1977) (per curiam). See also *Hopfmann v. Connolly*, 471 U.S. 459, 460, 105 S.Ct. 2106, 2107, 85 L.Ed.2d 469[471] (1985) (per curiam) (dicta). These decisions constitute adjudications on the merits, *Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223[236] (1975), to the extent indicated in *Mandel*.

"Petitioner's argument that the sixth amendment right to counsel attaches prior to taking an alcohol breath test was rejected by the Supreme Court on appeal in *Nyflot*. See *Nyflot* 474 U.S. at 1029, 106 S.Ct. at 587[, 88 L.Ed.2d at 569]. *Nyflot*, therefore controls our holding that petitioner was not denied her sixth amendment right to counsel in the instant case." *McVeigh v. Smith* (C.A. 6, 1989),

872 F.2d 725, 727-728. See, also, *Roberts v. Maine* (C.A.1, 1995), 48 F.3d 1287, 1290-1291.

{¶ 16} Appellant also asserts that the police violated her due process right to counsel guaranteed by Ohio Constitution's Redress in Courts provision, Section 16, Article I, Ohio Constitution. Appellant cites *Thomas v. Mills* (1927), 117 Ohio St. 114, 157 N.E.2d 488, in support of this contention. *Thomas*, however, held that this provision guaranteed a *criminal* defendant a right to an attorney for criminal appeals. As we noted above, the suspension of a driver's license pursuant to R.C. 4511.191 is civil and administrative in nature. A driver's license in the state of Ohio is a privilege and not an absolute property right. *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 554 N.E.2d 97, paragraph two of the syllabus. As a result it does not fall within the language of "land, goods, person, or reputation" of Section 16, Article I, Ohio Constitution.

{¶ 17} Because appellant has no constitutional right to counsel under either the Fifth Amendment or the Sixth Amendment in this case, the sole question that remains is whether appellant's refusal to take the chemical alcohol test is a "true refusal" pursuant to R.C. 4511.191, since the police violated her statutory right to counsel contained in R.C. 2935.20.

{¶ 18} As we stated in *Cline v.Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 99, 573 N.E.2d 77, 82, the Ohio General Assembly adopted the implied consent statute, R.C. 4511.191, to aid in the removal of "drivers from Ohio roadways who would insist on exercising driving privileges while under the influence of alcohol. *Kettering v. Bakeer* (1975), 42 Ohio St.2d 351, 355, 71 O.O.2d 322, 324, 328 N.E.2d 805, 807. The implied consent statute provides a clear remedy by suspending the licenses of those drivers who refuse to take a sobriety test and is separate from, independent of, and cumulative to a criminal prosecution. *Andrews v. Turner* (1977), 52 Ohio St.2d 31, 35-36, 6 O.O.3d 149,

151, 368 N.E.2d 1253, 1256. It is designed to discourage any person from refusing to take the tests when he is arrested for driving while under the influence."

{¶ 19} We realize that the decision of whether or not to submit to a blood-alcohol content test is a difficult one to make and one that most people would prefer to make on the advice of an attorney. However, the consent mandated when a person chooses to drive on Ohio roadways is an entirely civil requirement and the criminal protections for individuals that the General Assembly created do not apply. Moreover, the license suspension is *mandatory* upon refusal to take the test. Whether the driver requests an attorney does not affect the requirement that the arrestee submit to the test for blood-alcohol content or accept the alternative of license suspension.

{¶ 20} Appellant contends that the courts must order the reinstatement of the driver's license when law enforcement officials violate R.C. 2935.20 because the punishment that the General Assembly provided in the statute is inadequate to prevent future violations. The statute provides that a violator of the statute "shall be fined not less than twenty-five nor more than one hundred dollars or imprisoned not more than thirty days, or both." Appellant represents that no one has ever been charged with and been found guilty of a violation of this provision.

{¶ 21} This contention is based on matters outside the record of this case and, therefore, we will not consider them. The General Assembly provided a specific statutory punishment for violations of R.C. 2935.20. If the General Assembly intended the result sought by appellant it would have so provided.

{¶ 22} Therefore, we hold that, in the absence of any constitutional violations, when the police violate the statutory right to counsel contained in R.C. 2935.20, and the arrestee refuses to submit to the blood-alcohol content test until she effectively speaks with her attorney, the arrestee remains subject to license suspension. By refusing to submit to the test contingent on receiving the advice of

counsel, the arrestee has, for the purposes of the implied consent statute, R.C. 4511.191, "refused" to take the chemical alcohol test.

{¶ 23} Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, COOK and STRATTON, JJ., concur.

PFEIFER, J., dissents.

—————————