OPINION
{¶ 1} Defendant George K. McGill appeals a judgment of the Municipal Court of Fairfield County, Ohio, which overruled his appeal from an administrative license suspension because the court found appellant had refused to submit to a blood test after being charged with operating a motor vehicle while under the influence of alcohol or drugs. The trial court also overruled appellant's motion for limited driving privileges during the term of his suspension. Appellant assigns three errors to the trial court:
 {¶ 2} "I. Did the trial court commit prejudicial error when it overruled appellant's als appeal?
 {¶ 3} "II. Did the trial court commit prejudicial error when it found appellant refused a blood test?
 {¶ 4} "III. Did the trial court commit prejudicial error when it refused appellant occupational driving privileges?"
 {¶ 5} Appellant filed a three-branch motion: to suppress all evidence gathered at the arrest because the officer lacked probable cause to arrest him; a motion in limini to exclude the alleged refusal to submit to a blood test; and an appeal from the ALS suspension or in the alternative to grant him hardship occupational privileges. The court held a hearing on all branches of the motion.
 {¶ 6} At the hearing, Trooper Mark Ball of the Ohio State Highway Patrol testified about the circumstances of appellant's arrest. Trooper Ball testified he had received a dispatch about a motorcycle in the median on Route 33 in front of Lowe's. As Trooper Ball proceeded towards Lowe's, two motorcycles passed him moving away from Lowe's. The trooper turned around and followed the motorcycles until they separated. The trooper then followed appellant's motorcycle, because it had mud and grass hanging from it. Trooper Ball testified after he had followed the motorcycle for approximately .2 of a mile, it went off the side of the road and then end over end. Appellant was thrown off the motorcycle. The trooper testified the accident was just a gradual kind of arc, without jerking movements, and appellant did not use his brakes or turn signal as he went off the road. Trooper Ball testified appellant was not turning into a driveway or roadway because there were none in the area where the motorcycle went off the road. Trooper Ball testified there were no road conditions which would have caused him to skid or otherwise lose control.
 {¶ 7} Upon approaching appellant, Trooper Ball asked if he was all right. The Trooper noted appellant was unsteady on his feet and had a strong odor of alcohol coming from his person. Appellant told him he had not anything to drink in over a year. The trooper testified appellant had red, blood-shot, glassy looking eyes. Trooper Ball testified he performed a horizontal gaze nastigmus test, and detected six clues. The trooper did not perform any other field sobriety tests because of appellant's injuries.
 {¶ 8} At around this time the paramedics arrived and took appellant to the hospital. At the hospital, the trooper discussed the accident with appellant, but did not take any statement because appellant did not wish to make a statement until he had spoken with his attorney. Trooper Ball testified he requested appellant submit to a blood or urine test, and read him the BMV Form 2255, which recites the accused's rights and the consequences of refusing a chemical test. Appellant responded he wished to speak to his attorney before allowing blood to be drawn.
 {¶ 9} Appellant refused to sign the Form 2255. Trooper Ball testified appellant was free at any time to telephone his attorney, and there was a telephone and telephone book available to him.
 {¶ 10} Appellant took the stand at the motion to suppress, and explained his motorcycle had grass and dirt on it because he had parked in a field earlier in the evening. Appellant testified his companion had pulled into the median in front of Lowe's in order to make a telephone call, not because there had been an accident. Appellant testified his goggles were foggy because it had been raining. Appellant testified he did not know it was the Highway Patrol behind him, but merely knew someone had hit their bright lights behind him. Appellant testified he was attempting to turn into his friend's driveway but the throttle on his motorcycle was stuck. The stuck throttle combined with the wetness of the road caused appellant to lose control.
 {¶ 11} Appellant testified if he smelled of alcohol it was because he owns and operates a bar. On the evening in question, while he was changing a keg, beer splattered on his face and clothes and he had not had the opportunity to change. Appellant testified he did not refuse to take the blood test, but wanted his attorney present to observe and insure it was done properly. Appellant testified the officer never returned to speak to him again and he had no opportunity to offer to take the blood test without his attorney being present.
 {¶ 12} Appellant testified as the proprietor of the bar, he needed to be able to drive in order get supplies for his business. He also testified he had a second job doing blacktop work and mowing for Berne Township, but because of the ALS suspension he was no longer permitted to work for the township. Appellant testified if he received driving privileges he could return to this job.
 {¶ 13} The trial court found the results of the horizontal gaze nastigmus test should be suppressed because the trooper did not perform it in compliance with the regulations for the testing procedures as set forth in the NHTS manual, see State v. Homan (2000), 89 Ohio St. 3d 421,732 N.E. 2d 952. Nevertheless, the court found Trooper Ball had probable cause to arrest appellant, and also found appellant had refused to submit to the blood test. The trial court therefore overruled the appeal and found the suspension should date from June 14, 2004, which was the date of accident, to June 14, 2005. The court did not grant limited driving privileges.
 {¶ 14} Appellant ultimately pled guilty to failure to control and the State dismissed the driving while under the influence charge.
 I. {¶ 15} In his first assignment of error, appellant urges the trial court erred in overruling his ALS appeal. R.C. 4511.191 provides several conditions under which an administrative license suspension may be challenged. The statute provides the appellant has the burden of proving by a preponderance of the evidence one or more of the conditions have not been met. Appellant brought his appeal under R.C. 4511.191 (H)(1)(a), whether the law enforcement officer had reasonable grounds to believe the arrested person was operating a vehicle while under the influence of alcohol or with a prohibited concentration of alcohol in his blood, breath, or urine. Appellant argues Trooper Ball testified he had not observed any erratic driving until the accident. Appellant urges he explained the cause of the accident was the weather and the malfunctioning throttle on the motorcycle. Appellant had explanations for the odor of alcohol and the red, blood-shot eyes.
 {¶ 16} Appellant cites us to City of Mansfield v. Lindsey (Aug. 3, 1994), Richland Appellate No. 93-CA-100. In Lindsey, this court found an odor of alcohol was not sufficient probable cause for arrest for DUI even if it is coupled with other appearances of drunkenness such as blood-shot eyes or slurred speech, if those conditions could be attributed to injuries suffered in a collision. If the police officer does not observe impaired driving or other impairments, and does not perform field sobriety tests, the odor of alcohol is insufficient as a matter of law.
 {¶ 17} Appellee correctly points out there are three methods of challenging the trial court's ruling on a motion to suppress. An appellant may challenge a trial court's findings of fact, its application of law to the findings of fact, or its decision as to the final issue raised in the motion to suppress, see State v. Baker, (April 2, 2003), Fairfield Appellate No. 03-CA-77, 2004-Ohio-1769.
 {¶ 18} The Ohio Supreme Court has held an appeal of an ALS suspension is a civil matter, see State v. Williams (1996), 76 Ohio St. 3d 290. For this reason, we apply the standard set forth in C.E. Morris Company v.Foley Construction Company (1978), 54 Ohio St. 2d 279. A civil judgment which is supported by competent and credible evidence may not be reversed as against the manifest weight of the evidence. This court may not substitute its judgment for that of the trial court, Myers v. Garson
(1993), 66 Ohio St. 3d 610.
 {¶ 19} The trial court heard Trooper Ball's description of the circumstances and appellant's explanation. The trial court as the finder of fact determined Trooper Ball was more credible and accepted his version of events. This court may not reverse such a finding.
 {¶ 20} The first assignment of error is overruled.
 II {¶ 21} In his second assignment of error, appellant argues the trial court erred in finding he refused the blood test.
 {¶ 22} In Hoban v. Rice (1971), 25 Ohio St. 2d 111, 267 N.E. 2d 311, the Ohio Supreme Court held a refusal to submit to a chemical test occurs where a person, by his acts, words, or general conduct, manifests an unwillingness to submit to the test. The court found the refusal need not have been made knowingly and intentionally, and it is not necessary to show the person subjectively understood the consequences of refusal.
 {¶ 23} In Dobbins v. Ohio Bureau of Motor Vehicles (1996),75 Ohio St. 3d 533, 1996-Ohio-454, 664 N.E. 2d 908, the Ohio Supreme Court found the right to counsel does not apply to the stage at which an officer requests a chemical test for alcohol content. The court found although most people would prefer to make the choice of whether to submit to a blood-alcohol content test with the advice of an attorney, the implied consent is a civil matter, and criminal protections do not apply.
 {¶ 24} Appellee cites us to State v. Basye (February 4, 1997), Ross Appellate No. 96-CA-2211, wherein the Court of Appeals for the Fourth District reviewed a case similar to the one before us. In the Basye
case, the appellant argued as a law abiding citizen, with no previous involvement with a DWI arrest, he did not understand if he did not make a decision regarding taking a chemical test, it would be treated as a refusal. The appellant in Basye informed the arresting officer he would not sign any papers or take any test until he had spoken with a lawyer. The court found the appellant had been capable of taking the test, but manifested an unwillingness to do so, which permitted the conclusion he had refused the test.
 {¶ 25} In the case before us, appellant's version of what occurred at the hospital differed from the facts Trooper Ball recited. The trial court was free to believe any or all of the testimony, and we find appellant clearly expressed an unwillingness to take the chemical test.
 {¶ 26} The second assignment of error is overruled.
 III {¶ 27} In his third assignment of error, appellant argues the trial court committed prejudicial error when it refused to grant him occupational driving privileges. Appellant argues the trial court has a policy of never granting occupational driving privileges in a refusal case, but concedes it is difficult to establish a record for appeal. Appellant cites us to State v. Crosier (May 1, 1986), Tuscarawas Appellate No. 85AP12-092, wherein this court reviewed the trial court's admitted policy of not granting occupational privileges if there is a refusal to take a chemical test. This court found a trial court must exercise its judgment, and abuses its discretion where it simply imposes a universal policy on every case before it. See also, State v. Hesson (March 20, 1986), Washington Appellate No. 85X13; State v. Ritch (September 21, 1999), Scioto Appellate No. 99-CA-2634.
 {¶ 28} Appellant notes the trial court did not state on the record its reasons for denying occupational driving privileges. Our standard of review here is the abuse of discretion standard, Crosier, supra. R.C.4511.197 makes the granting of limited driving privileges during a suspension discretionary with the court.
 {¶ 29} At the hearing, appellant testified he owns the Handle Bar Saloon in Sugar Grove, Ohio, and lives in an apartment behind the bar. Appellant testified he had lost his employment with Berne Township because of the license suspension, and was forced to pay people to drive him around to purchase supplies and find bargains for the saloon. The State urges this indicates appellant has adapted to the situation and is able to cope without driving privileges. In addition, the trial court refused to state on the record it had a policy of never granting driving privileges in a refusal case.
 {¶ 30} This court cannot find under the facts and circumstances of this case, the court abused its discretion in refusing to grant occupational driving privileges to appellant.
 {¶ 31} The third assignment of error is overruled.
 {¶ 32} For the foregoing reasons, the judgment of the Municipal Court of Fairfield County, Ohio, is affirmed.
By Gwin, P.J., Hoffman, J., and Wise, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Municipal Court of Fairfield County, Ohio, is affirmed. Costs to appellant.