[Cite as *Tidewater Fin. Co. v. Cowns*, 197 Ohio App.3d 548, 2011-Ohio-6720.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| TIDEWATER FINANCE COMPANY, | : | APPEAL NO. C-110254 |
| | | TRIAL NO. A-0907074 |
| Appellant, | : | |
| | | *O P I N I O N.* |
| v. | : | |
| | | |
| COWNS, | : | |
| | | |
| Appellee. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded.

Date of Judgment Entry on Appeal:  December 28, 2011

Keith D. Weiner & Associates Co., L.P.A., Suzana Krasnicki, and Keith D. Weiner, for appellant.

Thomas R. Koustmer, for appellee.

.

**FISCHER, Judge.**

**{¶ 1}** Plaintiff-appellant Tidewater Finance Company t/a Tidewater Motor Credit and Tidewater Credit Services ("Tidewater") brought this action against defendant-appellee Marcellinus Cowns for default on a financing agreement. Cowns allegedly entered the agreement with Jeff Wyler Eastgate, Inc., to finance the purchase of a used vehicle from the company, which then assigned its rights under the agreement to Tidewater. Following a bench trial, the Hamilton County Court of Common Pleas entered judgment for Cowns. Because this judgment was contrary to the manifest weight of the evidence, we reverse.

### Facts & Procedural Background

**{¶ 2}** At trial, Tidewater called only one witness, a paralegal and records custodian employed by Tidewater. She conceded that she had no personal knowledge of the events surrounding the signing of the financing agreement and its assignment to Tidewater. Nevertheless, she authenticated the agreement and a payment ledger as records of regularly conducted activity under Evid.R. 803(6) and 901(B)(10). The trial court admitted these records without objection.

**{¶ 3}** The agreement indicates that on May 28, 2005, "Marcellinus M Cowns" agreed to buy a 2002 Mitsubishi Montero from Jeff Wyler Eastgate and financed $12,588.46 at an annual percentage rate of 21.95 percent. According to the agreement's payment schedule, the buyer agreed to pay Jeff Wyler Eastgate $350.44 per month for five years. The agreement also provided that if the buyer failed to make a payment on time, Jeff Wyler Eastgate was entitled to demand that the buyer pay the balance due "if the failure has continued for at least thirty (30) days." In that event, the amount owed would be "the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because [the buyer] defaulted."

**{¶ 4}** Two signature lines for the buyer appear on the agreement. Next to the first, the agreement provides, "This contract contains the entire agreement between you and us relating to this

2

contract. Any change to this contract must be in writing and [the creditor-seller] must sign it. No oral changes are binding." Next to the second, it states, "You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it." A signature appears on each line.

{¶ 5}    The signed document provides, albeit below the buyer's signature lines, that "[Jeff Wyler Eastgate] assigns its interest in this contract to TIDEWATER MOTOR CREDIT." This is also dated May 28, 2005. A signed signature line for Jeff Wyler Eastgate appears next to this language.

{¶ 6}    The payment ledger names "Cowns, Marcellinus M" as the customer on the detailed account. According to the ledger, the customer opened the account on May 28, 2005, with an opening balance of $12,588.46. The ledger also lists as the collateral on the account a 2002 Mitsubishi Montero with the same vehicle identification number specified in the financing agreement.

{¶ 7}    The ledger indicates several late payments, including four in 2006 that were over 30 days late. The last payment credited to the account appears to have been made later that year. The ledger also shows that the balance due on the date named in the complaint—May 29, 2009—was $11,609.48 in unpaid principal, $7,110.18 in unpaid accrued interest, a $250 attorney fee, and a $75 repossession fee, for a total amount due of $18,719.66.

{¶ 8}    In his defense, Cowns presented no testimony or other evidence. But in closing, he argued that Tidewater had failed to show that it was he who had signed the financing agreement. He also argued that the agreement was improperly assigned to Tidewater because there was no evidence that the buyer had agreed to the assignment in writing. The trial court entered judgment for Cowns, and Tidewater now appeals, raising two assignments of error.

3

**Analysis**

{¶ 9}   In its first assignment of error, Tidewater argues that the trial court erred in finding that the company had not proved by a preponderance of the evidence that a contract had existed between the parties and that Cowns had breached that contract.   And in its second assignment of error, Tidewater argues that the trial court erred in finding that the contract was not validly assigned to Tidewater.

{¶ 10}   These assignments of error are premised on a "Memorandum of Decision" that was apparently signed by the trial judge.   But this document was never filed.   Thus, we cannot—and must not—consider it as part of the record.   See App.R. 9(A); *Steinriede v. Cincinnati*, 1st Dist. No. C-100289, 2011-Ohio-1480, ¶ 10; see also *State v. Ishmail* (1978), 54 Ohio St.2d 402, 377 N.E.2d 500, paragraph one of the syllabus.   We therefore must examine the assignments of error only with respect to the trial court's entry of judgment.   Together, the assignments of error essentially challenge the court's judgment as contrary to the manifest weight of the evidence.

{¶ 11}   A civil judgment that is "supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.   "In an appeal from a bench trial, a reviewing court must presume that the factual findings of the trial judge are correct because the trial judge had an opportunity 'to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Lucero v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-288, 2011-Ohio-6388, ¶ 16, quoting *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.   "If the evidence is susceptible to more than one interpretation, we must give it the interpretation consistent with the trial court's judgment." *Cent. Motors Corp. v. Pepper Pike* (1995), 73 Ohio St.3d 581, 584, 653 N.E.2d 639.

4

{¶ 12} In this case, Tidewater asserted a breach-of-contract claim against Cowns. "To prevail on such a claim, a claimant must establish the existence of a contract, performance on its part, breach by the other party, and its own damage or loss." *Ward v. Cent. Invest. L.L.C.*, 1st Dist. Nos. C-100080 and C-100081, 2010-Ohio-6114, ¶ 12. "For a valid contract to exist, there must be an offer on one side, an acceptance on the other side, and mutual assent between the parties with regard to the consideration for the bargain." *Nunez v. J.L. Sims Co.*, 1st Dist. No. C-020599, 2003-Ohio-3386, ¶ 24.

{¶ 13} We hold that with the admission of the financing agreement and the payment ledger at trial, Tidewater presented competent, credible evidence going to all the essential elements of its claim against Cowns. On its face, the agreement shows that there was a contract between Tidewater's assignor, Jeff Wyler Eastgate, and "Marcellinus M Cowns." This is competent, credible evidence that the defendant-appellee, Marcellinus M. Cowns, was a party to this agreement. See 42 Ohio Jurisprudence 3d (2011) Evidence and Witnesses, Section 145 ("Identity of persons will be presumed from identity of names, especially if the name is not a common one"). Further, the ledger indicates performance by Jeff Wyler Eastgate, breach by Cowns, and damage to Tidewater. As noted above, the ledger names Tidewater's customer as "Cowns, Marcellinus M" and identifies the collateral on the account as a 2002 Mitsubishi Montero with the same vehicle identification number as listed in the financing agreement.

{¶ 14} Cowns did not refute either the agreement or the ledger with evidence and did not object to either their authentication or their admission by the trial court. We are mindful that Tidewater bore the burden of proving the elements of its claim by a preponderance of the evidence. See, e.g., *Schaffer v. Donegan* (1990), 66 Ohio App.3d 528, 534, 585 N.E.2d 854. We also recognize that "triers of fact are not required to accept evidence simply because it is uncontroverted, unimpeached, or unchallenged." *Smith v. Simkanin*, 5th Dist. No. 2011-CA-00045, 2011-Ohio-

6123, ¶ 32. Nevertheless, under the facts of this case, we hold that the manifest weight of the evidence clearly supports a finding that Cowns entered the financing agreement with Jeff Wyler Eastgate.

{¶ 15} Furthermore, the agreement is competent, credible evidence that the contract—in providing that "Seller assigns its interest in this contract to TIDEWATER MOTOR CREDIT"—was assigned by Jeff Wyler Eastgate to Tidewater.

{¶ 16} There is nothing in the record indicating that this assignment was invalid. The law generally favors the free assignability of contracts absent "clear contractual language prohibiting assignment." *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St.3d 482, 2006-Ohio-6551, 861 N.E.2d 121. See also Restatement of the Law 2d, Contracts (1981) Section 317(2). With some exceptions, "unless otherwise agreed all rights of either seller or buyer can be assigned except where the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on the other party by the contract, or impair materially the other party's chance of obtaining return performance." R.C. 1302.13.

{¶ 17} Cowns argues that under the financing agreement, the buyer had to agree to any assignment. He apparently relies on the agreement's provision stating, "Any change to this contract must be in writing and [Jeff Wyler Eastgate] must sign it." We cannot say, however, that this general language clearly prohibited Jeff Wyler Eastgate from assigning its rights under the agreement absent the buyer's written approval. Moreover, the assignment was set forth in the signed agreement.

{¶ 18} Cowns also argues that the assignment to Tidewater materially impairs the buyer's chance of obtaining a return performance, particularly with respect to warranties, because Tidewater is a finance company, and Jeff Wyler Eastgate is an automobile retailer. At trial, however, Cowns presented no evidence to support this contention. Moreover, the financing agreement expressly

6

disclaims all warranties, including the implied warranties of merchantability and fitness for a particular purpose.

### Conclusion

{¶ 19} We are reluctant to reverse a trial court's judgment, especially in a civil case, as contrary to the manifest weight of the evidence. But here, we are forced to do so. The judgment of the trial court is reversed, and the cause is remanded with instructions for the trial court to enter judgment for Tidewater.

Judgment reversed,

and cause remanded.

**SUNDERMANN, P.J.,** and **HILDEBRANDT, J.,** concur.